RUSHMORE v. MANHATTAN SCREW & STAMPING WORKS.

(Circuit Court of Appeals, Second Circuit.  July 27, 1908.)

No. 264.

1. TRADE-MARKS AND TRADE-NAMES—WORDS SUBJECT TO APPROPRIATION—DESCRIPTIVE TERMS.

The words "Flare Front," as applied to automobile lamps, the shell of which flares in front to inclose a large glass, are descriptive, and cannot be monopolized by a single manufacturer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 6.

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

2. SAME—UNFAIR COMPETITION—IMITATION OF DESIGN OR DRESS OF ARTICLE.

One who manufacturers and sells a well-known article of commerce, like an automobile search light, inclosed in a shell of graceful but unpatented design, may maintain a bill for an injunction, profits, and damages against a defendant who sells an automobile search light inclosed in a similar shell, although his name appears prominently thereon as maker, and he has never represented that his lamps were made by complainant, if it is shown that the similarity of the shells does, or is likely to, deceive purchasers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 86.]

Noyes, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

On appeal from an order granting a preliminary injunction enjoining the defendant, its officers, employés, and agents "not to manufacture, sell, or use, exhibit or advertise, any automobile lamp or lamps having inclosing cases or shells made in imitation of, or resembling, or a colorable variation of, the Rushmore 'Flare Front' search-light lamp, exhibited to this court herein, and of which a sample has been offered, marked 'Exhibit A,' except in so far as such lamps may be the genuine lamps made by complainant, and not to use, in connection with any lamp made in imitation of, or resembling, or a colorable variation of, said Exhibit A Rushmore lamp, the words, 'Flare Front,' and not to print or publish, or have printed or published, in catalogues or advertisements or elsewhere, any cut or representation of any lamp in imitation of, or similar to, said Exhibit A Rushmore lamp, and not to print or publish, in any catalogue or advertisement or elsewhere, the words 'Flare Front' or similar words in connection with the representation of any lamp made in imitation of or similar to said Exhibit A lamp, except in so far as such representation and such words may be used to advertise, or in connection with, genuine Rushmore lamps made by complainant."

Hans v. Briesen (Arthur v. Briesen, of counsel), for appellant.
Alfred Wilkinson, for appellee.

Before COXE and NOYES, Circuit Judges, and ADAMS, District Judge.

COXE, Circuit Judge (after stating the facts as above). In December, 1905, the complainant adopted a design for the shell of an automobile lamp and in the following January exhibited it at the exhibition of automobiles at Madison Square Garden, New York. This is the complainant's lamp in controversy. Its exterior is pleasing to the eye and it is unquestionably a high grade lamp, but there is nothing strikingly novel or ornamental about it. In general contour it resembles the search light which has for years been in use upon excursion boats and vessels of war, the principal difference being in the addition, by the complainant, of the so-called "Flare Front." The glass front of the lamp being larger in diameter than the body of the lamp except as it flares out near the front to meet and inclose the glass. No patent has been granted to Rushmore either for a combination, for a new article of manufacture or for a design for the shell of the lamp. It is possible that had application been made a design patent might have been granted and sustained. In West Disinfecting Co. v. Frank, 149 Fed. 423, 79 C. C. A. 359, this court recently held valid a design patent for a somewhat similar structure.

The defendant is manufacturing a lamp which, though differing in several details of construction, unquestionably resembles in external appearance the Rushmore lamp. If a valid design patent had been issued to the complainant we have no doubt that the defendant's lamp would infringe and, believing as we do that the points of difference are unimportant, we will consider the question involved upon the theory that the shells of the two lamps are substantially identical.

The defendant has adopted "Phoebus" as its trade-mark and its lamp is known to the trade as the Phoebus lamp. All of its lamps have conspicuously displayed on the top thereof a name plate with a black background inscribed "Phoebus, the lamp of Quality, Model 601, Manhattan Screw & Stamping Works, N. Y." The officers of the defendant deny that they, or any one connected with the defendant, have ever in any way represented their lamps as those of the complainant. There are allegations in the bill, made upon information and belief, that the defendant has palmed off its lamps upon innocent purchasers as the Rushmore lamps, but there is nothing in the affidavits worthy of the name of evidence to establish these allegations. The affidavits, in our judgment, also fail to establish an exclusive right to the use of the name "Flare Front." The complainant says in his affidavit, "I am aware that what might be called 'flaring fronts' have been used on other forms of lamps entirely different in appearance from my Exhibit A lamp, for instance the old carriage lamps, but I am positive that I am the first who has ever used these flare fronts on any lamp similar in appearance to my Exhibit A." Assuming the correctness of this statement we do not think the fact that complainant was the first to put a flaring front on a shell of his design entitles him to a monopoly of these words. We regard them as descriptive merely and are of the opinion that an injunction should not issue at least until proof, more cogent than anything which now appears in the record, is presented, showing that they have acquired a secondary meaning. So far then as the prayer for an injunction is based upon the use of the name "Flare Front" and the allegation that the defendant has actually deceived purchasers by representing that its lamps were made by the complainant, the most that can be said is that the questions are involved in doubt. This court has uniformly held that an injunction should not issue in a doubtful case. Hall Signal Co. v. Railway Signal Co., 153 Fed. 907, 82 C. C. A. 653; Cleveland Foundry Co. v. Silver, 134 Fed. 591, 68 C. C. A. 87; Hildreth v. Norton, decided Feb. 11, 1908 (C. C. A.) 159 Fed. 428.

As we read the opinion of the judge of the circuit court he finds no actual fraud and no evidence that the defendant is now using the word "Flare Front." He says: "Assuming that at the present time the defendant is not using the word 'flare front,' is not selling its product as Rushmore lamps, and is not using in any way either of these words or phrases, the question is whether plaintiff is entitled to be protected from unnecessary imitation of nonfunctional parts of his well-known lamp. It seems to me that under the cases of Enterprise Manufacturing Co. v. Landers, 131 Fed. 240, 65 C. C. A. 587, and Marvel Co. v. Pearl, 133 Fed. 160, 66 C. C. A. 226, he is so en-

titled." We are thus confronted with the naked question of law—Can one who manufactures and sells a well-known article of commerce, like an automobile search light inclosed in a shell of graceful but unpatented design, maintain a bill for an injunction, profits and damages against a defendant who sells automobile search lights inclosed in a similar shell, with his name prominently appearing thereon as the maker, and who has never represented that his lamps were made by the complainant? We feel constrained to answer this question in the affirmative upon the authority of Enterprise Co. v. Landers, supra, and Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149. Both of these cases were decided by this court and we see no way to distinguish them, on principle, from the case at bar. We are of the opinion, however, that to answer this question in favor of the complainant carries the doctrine of unfair competition to its utmost limit. If it be pushed much farther those engaged in trade will be encouraged to run to the courts with trivial complaints over the petty details of business and thus will grow up a judicial paternalism which in time may become intolerable.

This cause or one involving the question at issue may be easily brought here on appeal from final decree and heard at the next term. After the witnesses have been cross-examined we may be able to tell with much greater certainty whether the competition of which the complainant complains is produced by the similarity of the shells of the two devices or by the fact that defendant is selling its lamps at a much lower price. It appears from the record that purchasers of automobiles belong to the wealthy class who are not particular about the price paid so long as they secure durable and efficient machines. They are not the class of buyers who might purchase a padlock, for instance, after a casual inspection, and it is not easy to understand how such fastidious buyers with the Phoebus name plate before them can be deceived into thinking that they are purchasing the Rushmore lamp. If it should appear, after full hearing, that the effect of the injunction will be to stifle legitimate competition rather than to punish unfair competition we will not hesitate to dissolve it, but, upon the affidavits now before us, the majority of the court is of the opinion that the case is controlled by the former decisions of this court.

The order should be modified by excluding from its provisions the prohibition against the use of the name "Flare Front" and, as so modified, is affirmed.

NOYES, Circuit Judge (dissenting). I cannot concur in the opinion of the majority of the court. The complainant manufactures an automobile lamp of a particular shape, bearing his name, and known as the "Rushmore lamp." The defendant manufactures a lamp of a similar shape, with its name conspicuously displayed upon it, which is known as the "Phoebus lamp." The complainant has no design patent, and his case must stand, if at all, as a case of unfair trading, in which the essential element is deception—the palming off of one's goods as those of another. But how a purchaser could be deceived into buying

an automobile lamp plainly marked with the name and trade-mark of the defendant in the belief that it was the complainant's lamp is more than I can comprehend. The mere similarity in the shape of the lamps in my opinion is not sufficient to produce such a result. The majority, however, in view of earlier decisions of the court, are of the opinion that the similarity in itself establishes a case of unfair competition. But, whatever view may be taken of those decisions, I think the complainant, upon the proof as it stands, has failed to bring himself within them. Certainly they do not hold that when the shape of an unpatented article possesses advantages from the viewpoint of mechanical utility it is unfair or unlawful to imitate it. Possibly upon full hearing the complainant may be able to show unnecessary imitation of nonfunctional parts, but I am not satisfied from the affidavits that he has yet done so.

In my opinion the order granting the preliminary injunction should be reversed.