## ILG ELECTRIC VENTILATING CO. v. EVRY-USE PRODUCTS, Inc.

District Court, S. D. New York.

Dec. 29, 1937.

W. H. Swenarton, of New York City, for plaintiff.

Isidor Mates, of New York City (Hyman Mates, of New York City, of counsel), for defendant.

HULBERT, District Judge.

The defendant's blower, in appearance, is a Chinese copy of that of the plaintiff and, to a casual observer, not distinguishable except upon a close inspection of the name plates used by the plaintiff and defendant respectively.

It was testified by Mr. Babbin that the efficiency of defendant's product would not be impaired by structural changes in the housing of the defendant's product which would eliminate those confusing features.

Plaintiff's blower has been on the market for over twenty years, and during the period since 1915 one of its distinguishing characteristics is that the exterior of the housing has been painted olive green. There is some testimony that the Garden City Blower Company also put out a blower painted green, but it was admitted by Mr. Babbin that the use of green paint by the Garden City concern had been discontinued about four years ago, and the witness Hess had not seen any green-painted product of the Garden City Company since 1930.

A comparison of the cover of the catalog of the Garden City Company with that of the cover of the plaintiff's catalog shows there is a very decided difference in the manner in which the green is used, or was used, on the Garden City product as compared to the product of the plaintiff.

The defendant did not undertake to produce its blower until about three years ago. Mr. Petaky, who has handled the plaintiff's blowers as well as the Buffalo blower for a period of about 15 years, testified to a specific complaint from a customer following which, before he reported that complaint to the plaintiff, he went to the place of business of the defendant for the purpose of inspecting the blower which he had been informed the defendant was selling in competition with that of the plaintiff. He referred to subsequent complaints and testified that he had considerable difficulty in disposing of the stock of plaintiff's blowers on hand from the time that he received said complaints. After he had seen the defendant's blower and had had a conversation with Mr. Briggs, vice president of the plaintiff, he communicated with one Klaff who, at the instance of Petaky, bought a blower identical in appearance with that of the plaintiff, except for the name plate, for which Klaff paid $50, whereas the plaintiff's blower of the same type would have cost him $60 or more.

On the one hand we have the testimony of Mr. Briggs, corroborated by Mr. Lennon, and on the other hand we have the testimony of Mr. Babbin, supported by the testimony of Mr. Hess, as to what took place when Mr. Briggs and Mr. Lennon went down to the place of business of the defendant. Mr. Briggs says that the information with respect to the defendant's blower was quoted to him out of a catalog of the plaintiff. Mr. Babbin admits that he did quote out of the catalog of the plaintiff in order to give Mr. Briggs the information which Mr. Briggs requested with regard to the plaintiff's product, but that the information with respect to the defendant's product was given to Mr. Briggs, according to the testimony of Mr. Hess, out of the catalog of the defendant.

Considering the circumstances under which Mr. Briggs went to the place of business of the defendant, it does not seem reasonable to me that he would have disclosed, but rather would have concealed, his identity as a representative of the Ilg Manufacturing Company, and I feel bound to accept the testimony of Mr. Briggs and Mr. Lennon upon that issue as against that of Mr. Babbin and Mr. Hess.

The plaintiff brought this suit upon two causes of action, according to the bill filed August 5, 1935. The first was for an infringement of copyright, and the second for unfair competition. It appears that the plaintiff had a registered United States copyright on its catalog and the defendant is charged with infringement thereof, and that by reason of certain changes which were made in the catalog published by the defendant, the first cause of action was dismissed but the second survived.

"Unfair competition, except as affected by legislative enactment, * * * is dependent on abstract principles of law,

* * * may be concerned with any article of trade." West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833, modified 2 Cir., 176 F. 833.

The plaintiff is not without a remedy. Yale & Towne Mfg: Co. v. Alder, 2 Cir., 154 F. 37. Cf. Lektro-Shave Corporation v. General Shaver Corporation, 2 Cir., 92 F.2d 435.

The plaintiff and defendant are corporations organized under the laws of the states of Louisiana and New York, respectively; each having a place of business in the borough of Manhattan, county and state of New York, within this judicial district.

I find that more than five years ago the plaintiff originated and adopted for the blowers manufactured and sold by it certain characteristic, nonfunctional, distinguishing features and ornamentation, which it has continuously employed since, and among which features and ornamentation were a housing having similar opposing cast-iron sides connected together by a heavy sheet metal scroll or spiral designed with curvature and specially designed legs, identical with each other, bolted to specially positioned brackets mounted on the sides of such housing and a sheet metal bowl fitted into an aperture in one of the sides for the reception of the electric motor or bearing bracket; that for upwards of twenty years plaintiff has colored the external portion of the housing of its blowers in a characteristic green paint, and there is no proof that at the time plaintiff selected this olive green color for the exterior of its blower housing that green paint had been used or employed in connection with the construction and sale of any other blowers sold by any other manufacturer.

The proof in the case is that the plaintiff's blower has been widely advertised throughout the United States, and that the plaintiff has effected sales annually aggregating large sums of money in the United States and abroad; that subsequent to the beginning of the manufacture and sale of blowers by the plaintiff, but not more than six years prior to the commencement of this action, the defendant, with knowledge of the plaintiff's blower and without the consent of the plaintiff but with the intent to simulate the plaintiff's blower and divert plaintiff's business in blowers to itself, the defendant began prior to the commencement of this action and at the time of the commencement thereof, was engaged in the manufacture and sale throughout the United States, and especially within and throughout the Southern District of New York, of blowers substantially identical in size, shape, ornamentation, and general appearance to the blowers made and sold by the plaintiff and possessing the characteristics of the nonfunctional features of the plaintiff's blower, including the same external olive green color.

These acts on the part of the defendant constitute unfair practices in commerce and trade. The identity or deceptive resemblance in appearance of the blowers manufactured by the defendant has had the effect of deceiving the public and diverting sales from the plaintiff of its blowers to the defendant, as to which the court believes that the plaintiff has sustained damages, the amount of which cannot be determined without specific testimony upon that issue.

There will, therefore, be a decree enjoining and restraining the defendant from the continuance of the manufacture and sale of the blower that is a similitude of that of the plaintiff, and directing a reference to a special master to take and state an account and report upon the damages sustained by the plaintiff.

Unless the parties stipulate to accept this decision as the findings of fact and conclusions of law, formal findings may be proposed by either party on notice of settlement to the other.