### JOHN H. RICE & CO. v. REDLICH MFG. CO.†

(Circuit Court of Appeals, Third Circuit. January 31, 1913.)

### No. 71 (1,677).

TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—WHAT CONSTITUTES.

No one is entitled to a monopoly in the manufacture and sale of a toy bottle or container for candy, perfumery, etc., made in miniature imitation of an unpatented article, as a desk telephone; and the fact that one was the first to make and sell such an article as a novelty does not render its manufacture and sale by another unfair competition, where there is no attempt to deceive purchasers as to origin of manufacture, by imitation of dress, mark, or label, but the likeness is in the article itself, because both are copies of another article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-marks and trade-names, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Suit in equity by Alexander E. Redlich and Otto Redlich, trading as the Redlich Manufacturing Company, and another, proceeding to judgment only as to plaintiffs named, against John H. Rice & Co. From an order granting a preliminary injunction, defendants appeal. Reversed.

Bertram D. Rearick and Frank S. Busser, both of Philadelphia, Pa., for appellant.

Charles M. Clarke and Griffith & Mitchell, all of Pittsburgh, Pa. (Cyrus N. Anderson, of Philadelphia, Pa., of counsel), for appellees.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLSTAB, District Judge.

GRAY, Circuit Judge. This is an appeal from a decree of the court below ordering a preliminary injunction in a suit in equity brought originally by certain parties comprising the present appellees, Alexander E. and Otto Redlich, trading as the Redlich Manufacturing Company, and West Bros. & Co., against the appellants, John H. Rice & Co., as defendants, for alleged unfair competition in the making

and sale of a certain article of manufacture, viz., telephone-shaped bottles adapted to contain candy, perfumery, and the like. On objection to the jurisdiction, on account of the citizenship of West Bros. & Co., they, as parties complainant, were, with permission of the court, withdrawn, and the suit proceeded in the name of the Redlich Manufacturing Company, as complainants. The bill alleges that complainants—

"are engaged in the business of manufacturing and selling to the trade generally, certain novelties for the retail trade, in packages for candy, bottled goods, etc., and particularly in a certain novelty telephone-shaped bottle made in imitation of a desk extension telephone, the body portion of which comprises a bottle containing or adapted to contain candy, perfumery, and the like, and having a removable cork or stopper, made in imitation of the transmitter mouthpiece of a telephone, and including an imitation receiver."

Complainants also allege that they have manufactured and sold their goods under and by virtue of rights accruing from letters patent of the United States, issued in 1907 to the said Alexander E. Redlich, for certain improvements in bottle stoppers, which letters patent, it is alleged, identify and cover the construction, arrangement and form of the said novelty telephone-shaped bottle. They allege that they have, during a priod of upwards of six years, established various agencies and distribution depots in various parts of the United States, and have sold large quantities of the telephone-shaped bottles to the trade, and that West Bros. & Co., as exclusive licensees, have likewise sold large quantities of the said article throughout different parts of the United States. It is further alleged that this novelty telephone-shaped bottle, so sold and identified by said letters patent, is of great value and utility, and that the trade and public generally have acquiesced in and recognized the exclusive rights of the complainants. That large sums of money have been expended "on and about the said bottle," for the purpose of carrying on the business of manufacture, introduction and sale of the same.

It is then charged that the defendants, well knowing the premises, and in contravention of the exclusive rights of the complainants and their exclusive ownership and identification with the trade property in these telephone-shaped bottles, "due to complainants' origination, long continued manufacture, introduction and sale thereof," did, without license and against the will of complainants and in violation of their rights, make and sell bottles "embodying the novel features of appearance, construction, style, mode of operation, and otherwise, substantially similar to the novelty telephone-shaped bottles exclusively owned by complainants," and threaten to continue so to do. The bill then charges that such acts by defendants constitute unfair trade, and that complainants' business is threatened with demoralization, etc.

It appears that, though the patent for an improved bottle stopper is often mentioned in the said bill and alleged rights resulting therefrom more than once referred to, no claim is made by reason of the patent, and the suit has been pursued throughout as one for unfair competition.

It is admitted in argument that a suit under the patent was instituted prior to the bringing of the present suit, and is still pending. The

complainants, however, seek by the present bill for an injunction and an accounting. The article on which this monopoly of manufacture and sale is claimed by the complainants, is a diminutive bottle, not more than 3½ inches in height, in the exact similitude of a desk telephone, including mouth piece and receiver. Its capacity as a container is, of course, exceedingly small, adapted only to hold pellets of candy not larger than bird shot or minute portions of perfumery. Its function as a container of anything is negligible. It is a toy, rendered attractive by being a diminutive representation of a well-known article. It belongs to a class of such articles whose attractiveness consists in miniaturing articles of common use. It has been pointed out as a matter of common knowledge, that there are manufactured and on sale many so-called novelties, in the shape of miniature trunks, hand-bags, suit-cases, automobiles, violins, opera-glasses, cash registers, etc., and also many other things that would serve as toy containers. They are not articles of utility, and the only reason assignable for their production is that, being diminutive replicas of things in common use, they appeal to a certain sense akin to that of humor, especially in children. No proprietorship can be predicated in the novelty of such articles. They are neither new nor useful. The most that can be said is, that they are odd, or absurd. Every one is at liberty to make a replica, diminutive or otherwise, of an unpatented article. No one can obtain a monopoly on such an article by being the first to manufacture it, or the first to put it on the market. It is not unfair trade or unfair competition with the originator of such article of manufacture, that others should manufacture and sell the same thing.

The principle upon which the law in regard to unfair competition is judically administered is well settled and has been abundantly illustrated by numerous decisions of courts of equity in this country and in England. It rests on the proposition that equity will not permit any one to palm off his own goods on the public as those of another. Any one who manufactures and deals in an article of public use and in public demand has, under this doctrine, the right to protection of whatever reputation and good will he has established, in regard to the excellence or quality of such article, as associated with the source of its manufacture. Every one may have the right to make such article, but no one has the right, in putting the same article upon the market, to use any package, common-law, trade-mark, label, or other dress or indicia calculated to induce the casual purchaser to believe that the article is the manufacture of another person. This general statement of what may constitute unfair competition, while not exhaustive, may include such imitation of form, color, or other unessential and external details of the article itself, as may deceive the casual purchaser as to the origin of the manufacture. This, however, does not permit any person to monopolize the manufacture and sale of the article itself. So a person may manufacture and sell an unpatented article that has been previously manufactured by another, without being guilty of unfair competition, even though in all essential features the one article is an exact simulacrum of the other.

Turning to the case in hand, it is to be observed that, neither in the

bill of complaint nor the moving affidavits is there any allegation that the defendants have done more than to make an article structurally similar to the articles made by complainants. No common-law trade-mark is alleged to have been appropriated, and there is no allegation that any distinguishing marks, not essential features of the goods themselves, have been copied by the defendants. No allegation that the defendants so packed, dressed, or labeled their goods as to induce the casual purchaser to believe that defendants' goods were those of the complainants. The gravamen of complainants' case, as stated by themselves, is that defendants made a miniature imitation of a desk telephone, which imitation had been previously made by the complainants. As both imitations were of the same object, they were necessarily exactly alike. The similarity consists in the construction of the article in question. The defendants' imitation in miniature of a desk telephone was bound to resemble in all its essential features the miniature desk telephone of complainants, and there is no allegation —certainly there is no proof—of any imitation of such non-essential features of form, color, or other external details as would be calculated to cause deception as to the origin of manufacture.

The case thus differs from that of Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149, much relied upon by the appellees, in which certainly the doctrine of unfair competition has been carried to the utmost verge, as was said by the court in Rushmore v. Manhattan Screw & Stamping Works, 163 Fed. 939, 90 C. C. A. 299, 19 L. R. A. (N. S.) 269.

It is to be observed, however, that in Yale & Towne v. Alder, the charge of unfair competition was, that the defendant had so closely copied the plaintiff's padlock, in form, size, coloring, lettering and details of finish, as that purchasers would likely be induced to buy his padlock, supposing it to be the padlock of the plaintiff. The court said:

"His (defendant's) apparent purpose was to extend his trade with retail dealers and supplant the plaintiff's sales to such dealers by furnishing them with an article which could be sold readily to customers as the article made by the plaintiff."

There is no such feature presented in the case before us. The Yale lock had a world-wide reputation, and apparently a large part of the value of defendant's lock consisted in the belief of the purchaser, induced by the defendant's imitation of unessential details of form and color, that the lock was of the Yale & Towne manufacture. It is apparent, and there is no evidence to the contrary, that any one who purchased the defendants' miniature telephone, cared nothing for the origin of its manufacture, much less does it appear that any one was induced to buy by the belief that he was buying an article made by the complainants. The right to make a toy by a minute imitation of a natural or artificial object was common to all the trade. Defendants here were selling the same article, or rather an exactly similar article to that manufactured and sold by the complainants. There was no attempt by the defendants, and no reason for attempting, to deceive the public as to the origin of

manufacture. The likeness was in the goods themselves,—not in any brand, label, trade-mark or package. As said by Judge Holmes in Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667, in speaking of the right of defendant to make a musical instrument called a "zither," precisely in form and construction like that of the plaintiff:

"Under such circumstances, the defendant has the same right as the plaintiff has to manufacture instruments in the present form, to imitate the arrangement of the plaintiff's strings or the shape of the body. In the absence of a patent, the freedom of manufacture cannot be cut down under the name of preventing unfair competition. * * * The instrument sold is made as it is, partly at least, because of a supposed or established desire of the public for instruments in that form. The defendant has the right to get the benefit of that desire, even if created by the plaintiff. The only thing he has not the right to sell is the good-will attaching to the plaintiff's personality—the benefit of the public's desire to have goods made by the plaintiff."

In the case of Marvel Co. v. Pearl (C. C. A. 2d Circuit) 133 Fed. 160, 66 C. C. A. 226, the plaintiff made a bulb syringe to use as a douche, by means of a whirling spray, under the name of "Whirling Spray." Defendant made one like it under the name of "Whirlspray." The Court of Appeals, in affirming the decree of the court below, quoted and approved the following finding of that court:

"There is nothing about the article, as made and sold by the defendants, that is not necessary in the making and operation of such an instrument. It is made in the form that it must be made in order to accomplish its purpose, and, if the making in that form is any representation that the thing made came from the plaintiff, it is because of the extent to which the plaintiff had made and displayed and sold it before the defendants began."

The Court of Appeals then adds:

"Unfair competition is not established by proof of similarity in form, dimensions, or general appearance alone. Where such similarity consists in constructions common to or characteristic of the article in question, and especially where it appears to result from an effort to comply with the physical requirements essential to commercial success, and not to be designed to misrepresent the origin of such articles, the doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition."

None of the cases cited by the appellees seems to us applicable to the case in hand. Nearly all, if not all, of them concern the imitation of the dress, label, or container of an article as a means of deceiving the public. The likeness here was in the thing itself, not in any container, mark, or label attached to it. The thing sold by both complainants and defendants was a toy, made attractive by reason of being an imitation of the same article of common use, to wit, a desk telephone.

It is true that in Cook & Bernheimer v. Ross (C. C.) 73 Fed. 203, cited by the appellees, the unfair competition complained of was the use by defendant of a peculiarly shaped bottle for holding a brand of whisky known as "Mount Vernon." The form of the bottle was square, and such form was copied, but was shown to have been original with the complainant and used as a brand or trade-

mark of the whisky he manufactured. The court said that it could not—

"escape the conviction that they found the square shaped bottle convenient and useful, because it was calculated to increase the sale of their goods, and that such increase, if increase there be, is due to the circumstances that the purchasers from defendants have reasonable expectation that the ultimate consumer, deceived by the shape, will mistake the bottle for one of complainants'."

No comment is necessary to point out the distinction between this case and the one before us. It is not alleged that defendants in the case before us sought to sell minute portions of candy or perfumery, by packing them in telephone-shaped bottles like those first used by the complainants. The bottles themselves were the goods that were sold, and the unfair competition is not in selling either candy or perfumery, but in selling these very bottles. No doubt could have been entertained in the case last above referred to, as to the right of defendants to trade in the square-shaped bottles, as bottles, without regard to their contents. . The conduct of the defendants denounced by the court as unfair competition was their using the peculiarly shaped bottle of complainants as a means of selling their own whisky as that of the complainants. The square-shaped bottle having been long associated with the whisky made by the complainants, its use by the defendants was likely to induce in the casual purchaser the belief, in buying the defendants' whisky, that he was buying that of the complainants.

We think the proposition a sound one, that, where the likeness is in the goods themselves, because of the copying of the unpatented structure or design of complainants' article, and not in unessential marks applied to the goods, or in the container or dressing up of the goods, and there is no evidence that defendants attempted to palm off their goods as those of complainants, there is no legal basis for an action of unfair competition.

Further discussion of the cases cited by the complainants below seems unnecessary, and for the reasons stated the decree below is reversed.